UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEYBANC CAPITAL MARKETS INC, <br><br> Plaintiff, <br><br> v. <br><br> BRIDGELINK POWER, LLC; BRIDGELINK DEVELOPMENT LLC; EMERGEN ENERGY, LLC; C & C JOHNSON HOLDINGS, LLC; ENERGY INDEPENDENT PARTNERS, LLC; and COLE W. JOHNSON, <br><br> Defendants. | CASE NO. _____ <br><br> **COMPLAINT** |

Plaintiff KeyBanc Capital Markets Inc. ("Plaintiff" or "KBCM"), for its complaint against defendants Bridgelink Power, LLC ("Bridgelink Power"), Bridgelink Development, LLC ("Bridgelink Development"), Emergen Energy, LLC ("Emergen"), C & C Johnson Holdings, LLC ("C&C"), Energy Independent Partners, LLC ("EIP") (collectively, "Bridgelink" or "the Bridgelink entities") and Cole W. Johnson ("Cole Johnson") (all together, the "Defendants") alleges as follows:

## NATURE OF THE ACTION

1. This lawsuit arises out of Bridgelink's breach of a September 29, 2023, agreement with KBCM for KBCM's rendering of financial advisory and investment banking services regarding one or more "Transactions" involving Bridgelink ("Agreement").

2. In return for these services, Bridgelink agreed to pay KBCM a minimum of $3 million plus expenses upon the consummation of any "Transaction," as that term is defined in the Agreement.

3.     Over the course of the parties' relationship, and pursuant to the Agreement, KBCM devoted thousands of hours and considerable resources to Bridgelink and its majority owner, Cole Johnson.

4.     For example, KBCM prepared detailed marketing materials for Bridgelink's use in soliciting buyer interest, conducted outreach to potential investors in both KBCM's and Bridgelink's network, assisted Bridgelink in analyzing and weighing potential Transactions, and completed significant financial modeling and analysis for potential Transactions.

5.     With the benefit of KBCM's work, on April 24, 2024, Bridgelink sold substantially all of its assets to Bitech Technologies Corporation ("Bitech").

6.     Despite KBCM upholding its end of the bargain, Bridgelink—at the direction of Cole Johnson—reneged on its promise and has refused to pay KBCM the fee that KBCM is owed.

7.     KBCM brings this suit to enforce Bridgelink's obligations under the Agreement and to recover its transaction fee, expenses, prejudgment interest, costs, and attorneys' fees.

8.     Cole Johnson is liable to KBCM personally as an alter ego of the Bridgelink entities because he completely dominated those entities and engaged in wrongful conduct towards KBCM in preventing these entities from being able or willing to satisfy the debt they owe to KBCM.

9.     In the alternative, KBCM brings this suit to prevent Bridgelink and Cole Johnson from being unjustly enriched by retaining the financial benefits from the Bitech Transaction without fair compensation to KBCM.

## THE PARTIES

10.     KBCM is an investment bank that provides industry expertise and client services across various business sectors. It is a corporation organized and existing under the laws of the

State of Ohio and maintains its principal place of business at 127 Public Square, Cleveland, Ohio 44114.

11. Bridgelink is an energy company, focused on developing and operating solar energy and battery storage projects, located at 777 Main Street, Suite 3000, Fort Worth, TX 76102. On April 24, 2024, as further described below, Bridgelink sold substantially all of its assets to Bitech by transferring these assets to a subsidiary, Emergen, and then transferring the membership interests in Emergen to Bitech, such that now Emergen is a wholly owned subsidiary of Bitech.

12. Cole Johnson is the majority holder of the equity interests in all the Bridgelink entities (except Emergen after the Bitech transaction), possessing, upon information and belief, an 80% stake in the holding companies that are the sole members of the operating entities.

13. At all times material to this complaint, Cole Johnson exercised complete control and dominion over all of the Bridgelink entities.

14. Except for Emergen, the remaining Bridgelink entities (Bridgelink Power, Bridgelink Development, C & C, and EIP) are citizens of the State of Texas.

15. Bridgelink Power, Bridgelink Development, C & C, and EIP are limited liability companies that, through various chains of LLC ownership, are ultimately owned by Cole Johnson and his brother, Cord Johnson, both of whom are citizens of the State of Texas. Upon information and belief, no other corporations or persons have an ownership stake in any of these entities or intermediary LLCs.

16. Bridgelink Power is a limited liability company organized under the laws of the State of Delaware. Bridgelink Power's sole member is a Delaware limited liability company,

Bridgelink Power Holdings, LLC, which in turn has two members, Cole Johnson and Cord Johnson, both of whom are citizens of and have their domicile in the State of Texas.

17. Bridgelink Development is a limited liability company organized under the laws of the State of Delaware. Bridgelink Development's sole member is C & C, also a Delaware limited liability company, which, upon information and belief, has two members, Cole and Cord Johnson, both of whom are citizens of and have their domicile in the State of Texas.

18. EIP is a limited liability company organized under the laws of the State of Delaware. Upon information and belief, EIC, either directly or via an intermediary LLC that wholly owns EIC, is owned entirely by Cole and Cord Johnson, both of whom are citizens of and have their domicile in the State of Texas.

19. Emergen is a limited liability company organized under the laws of the State of Delaware. Prior to the Bitech transaction, Emergen's sole member was Bridgelink Development. As part of the Bitech transaction, Bridgelink Development transferred all of the membership interests in Emergen to Bitech, which is a Delaware corporation headquartered in California at 895 Dove Street, Suite 300, Newport Beach, California 92660. Thus, Emergen is a citizen of Delaware and California.

## JURISDICTION AND VENUE

20. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because KBCM and Defendants are citizens of different states and the amount in controversy exceeds $75,000. Specifically, KBCM is a citizen of Ohio, Defendants are citizens of Texas, Delaware, or California, and KBCM seeks more than $3 million from Defendants.

21. Pursuant to the Agreement, the Bridgelink entities consented to personal jurisdiction in New York for "any claim, dispute, or controversy directly or indirectly relating to or arising out of this agreement[.]" (Ex. A, App'x A, ¶ 13.)

4

22. Bridgelink's consent to personal jurisdiction in New York also applies to its owner, Cole Johnson, who—as explained below—was the alter ego of Bridgelink at all relevant times and exercised complete control over Bridgelink to commit the wrongful conduct against KBCM that is described in this complaint.

23. Personal jurisdiction over Cole Johnson in New York is also proper because, as owner and chief executive of Bridgelink that signed the Agreement, and Bridgelink's principal agent and decision-maker in connection with the Agreement, it was reasonably foreseeable that the Agreement's forum selection clause might be enforced against Cole Johnson personally.

24. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(a) because Bridgelink has consented to personal jurisdiction and because Bridgelink has agreed to venue in the United States District Court for the Southern District of New York. (Ex. A, App'x A, ¶ 13.)

## FACTUAL ALLEGATIONS

### KBCM's History with Bridgelink

25. Since 2019, KBCM has provided a wide array of financial advisory services to Bridgelink.

26. In 2019, KBCM provided material assistance in the pitch and attempted sale of Bighorn Construction, one of Bridgelink Power's subsidiary companies. As part of those efforts, KBCM prepared and distributed detailed marketing and diligence materials to over 70 investors before oil prices cratered and a sale became unworkable.

27. KBCM subsequently maintained its relationship with Bridgelink throughout 2019, 2020 and 2021, and provided advice and assistance to Bridgelink as its owners (Cole and Cord Johnson) transitioned the business away from a focus on oil and gas towards renewable energy.

28. Then, in 2022, KBCM renewed its efforts to solicit investor interest in another Bridgelink Power subsidiary, Bridgelink Engineering LLC, which focused on renewable engineering, procurement, and construction services.

29. KBCM spent substantial time and effort on this project before issues arose with Bridgelink Engineering's customers, and a sale of the company was again unworkable.

### The Parties Enter into the Agreement to Facilitate One or More Transactions Involving Bridgelink

30. Approximately one year later, in 2023, Bridgelink and Cole Johnson approached KBCM to raise capital or assist and advise Bridgelink on the financial aspects of a potential sale.

31. On September 29, 2023, KBCM and Bridgelink entered into the Agreement under which KBCM agreed to provide financial advice and assistance to Bridgelink in exchange for the payment of certain compensation and fees.

32. A true and correct copy of the Agreement is attached as **Exhibit A**.

33. As set forth in the Agreement, KBCM was engaged as Bridgelink's advisor to assist Bridgelink "in connection with one or more possible Transactions[.]" (Ex. A, at 1.)

34. KBCM's services under the Agreement consisted of "financial advice and assistance in connection with the Transaction as the Company may reasonably request, including, without limitation . . . searching for potential counterparties, advising and assisting the Company in evaluating the various structures and forms of any Transaction, assisting the Company in the evaluation of offers and in negotiating the financial aspects of the Transaction." (*Id*. at 2.)

35. In relevant part, the Agreement broadly defined "Transaction" to include:

> [W]hether effectuated directly or indirectly or in a series of transactions. . . . (b) the acquisition of (i) all or a material portion of the businesses, assets or divisions of the Company . . . .

(Ex. A, at 1.)

36. "Company" in the Agreement was defined as "Bridgelink Power, LLC … together with its subsidiaries … [and] any entity or other structure that the Company may form or utilize to effect any of the transactions contemplated" by the Agreement. (*Id*.)

37. In exchange for KBCM's services, the "Company" agreed to pay KBCM a "Sales Transaction Fee" of the greater of $3 million or 2% of the Transaction Value. (*Id.* at 3.)

38. The Company also agreed to pay KBCM's reasonable out-of-pocket expenses incurred in performing its services, regardless of whether a Transaction occurred. (*Id.* at 5.)

39. The Company agreed to pay the Sales Transaction Fee "within 10 business days following consummation of any Transaction." (*Id*.)

40. The Agreement, and Bridgelink's obligation to pay KBCM for its work, is binding on all the Bridgelink entities because they were either formed or utilized to effectuate a Transaction contemplated by the Agreement, and are controlled by Cole Johnson, who had the authority to, and did, bind these entities to the Agreement.

### KBCM Devotes Substantial Time and Resources to Bridgelink

41. On or about September 2023, and pursuant to its Agreement with Bridgelink, KBCM once again engaged in substantial efforts to market Bridgelink's business and solicit investor interest in the company.

42. As part of these efforts, KBCM created detailed marketing and diligence materials for Bridgelink and Cole Johnson to attract investors or potential buyers, including confidential information memoranda ("CIMs") that provided—in significant detail—an overview of Bridgelink's capabilities, projects, initiatives, finances, and growth potential, as well as potential transaction structures.

7

43. From late October 2023 through early 2024, KBCM prepared and distributed 61 CIMs to investors and potentially interested parties.

44. KBCM also provided extensive financial advice and assistance to Bridgelink and Cole Johnson, including, but not limited to, developing and creating marketing materials and financial models, identifying and communicating with over 300 potential purchasers and investors, facilitating due diligence, advising and assisting Bridgelink and Cole Johnson in evaluating various structures and forms of potential Transactions, and leading and facilitating negotiations.

45. In November 2023, KBCM and Bridgelink also began discussions and negotiations with Bitech concerning its interest in Bridgelink's assets.

46. Bitech received, reviewed, used, and relied upon materials that KBCM prepared regarding Bridgelink.

47. At the request of Cole Johnson, KBCM assisted Bridgelink and Cole Johnson with due diligence, met with the Bitech team in person, and did extensive financial modeling on the Bitech transaction, including evaluating several potential deal structures.

48. KBCM also advised Bridgelink and Cole Johnson on the deal terms and negotiated and participated in the drafting of the letter of intent.

49. As the negotiations with Bitech progressed, KBCM remained deeply involved and provided extensive advice and assistance to Bridgelink and Cole Johnson in evaluating the potential Transaction.

**Bridgelink Consummates a Transaction with Bitech**

50. With assistance from KBCM, Bridgelink's negotiations with Bitech successfully materialized.

51. On or about April 24, 2024, Bridgelink and Bitech completed a transaction in which Bitech acquired substantially all of Bridgelink's assets and several of Bridgelink's employees.

52. A true and correct copy of the Membership Interest Purchase Agreement ("MIPA") between Bitech and Bridgelink is attached as **Exhibit B**.

53. As consideration for the transaction, Bridgelink Development received 222 million shares of Bitech stock then worth approximately $22.2 million. Moreover, Bitech is scheduled to pay EIP additional payments of approximately $29 million pending capital raises, described as development fees, over the next 24 months as well other payments based on project performance.

54. The Transaction with Bitech was an acquisition of substantially all of Bridgelink's assets and company operations.

55. The assets that Bridgelink sold to Bitech were the same assets for which KBCM was engaged to provide, and did provide, financial consulting services under the Agreement.

56. Over the course of KBCM's relationship with Bridgelink and Cole Johnson, beginning in 2019 and continuing until Bridgelink's Transaction with Bitech closed in 2024, KBCM has spent thousands of hours working to the benefit of Bridgelink and Cole Johnson.

57. From September 29, 2023, to June 2024 alone, KBCM spent over one thousand hours providing services under the Agreement to Bridgelink and Cole Johnson—all at the request of Cole Johnson.

### Bridgelink Owes KBCM a Fee for the Bitech Transaction

58. Bridgelink's sale of substantially all of its assets to Bitech constitutes a "Transaction" under the Agreement because it is an "acquisition of … all or a material portion of the businesses, assets, or divisions" of Bridgelink. (Ex. A, at 1.)

9

59. Accordingly, this Transaction triggered Bridgelink's obligation to pay a Sales Transaction Fee in the amount of $3 million pursuant to the Agreement because $3 million is greater than 2% of the Transaction Value. (*See id*. at 3-4.)

60. On or about June 24, 2024, KBCM sent Bridgelink an invoice in the amount of $3,032,367, which sum represents the $3 million Sales Transaction Fee and KBCM's out-of-pocket expenses in the amount of $32,367.

61. A true and correct copy of KBCM's invoice to Bridgelink, dated June 24, 2024, is attached hereto as **Exhibit C**.

62. Bridgelink is not entitled to a credit against the Sales Transaction Fee for its retainer because it never paid KBCM's retainer fees, despite KBCM invoicing for such fees.

63. Under the terms of the Agreement, Bridgelink is liable for, and KBCM is entitled to receive, full payment of the Sales Transaction Fee in the amount of $3 million, all of its out-of-pocket expenses incurred working for Bridgelink, and all legal fees and expenses incurred in connection with the prosecution of this action.

**Cole Johnson Is Personally Liable to KBCM**

64. Despite KBCM's repeated demand for payment—both prior to and after the invoice—Bridgelink has failed to pay KBCM any of the fee that KBCM is owed.

65. Cole Johnson, who solely controls and dominates all the Bridgelink entities, has informed KBCM that Bridgelink will not satisfy its debt to KBCM.

66. Cole Johnson's dealings with KBCM justify piercing the Bridgelink entities' corporate veil and imposing liability directly on Cole Johnson.

67. Under New York law, imposing liability on an owner for the debts of a corporate entity, including a limited liability company, is proper where the owner exercised complete

domination over the corporation with respect to the transaction at issue and the owner's domination was used to commit a wrong against the injured party seeking to pierce the veil.

68. Fraud is not required for the Court pierce the corporate veil. Rather, claims of inequity or malfeasance, such as allegations that corporate funds were purposefully diverted to make the entity judgment-proof, suffice.

69. This standard is met here because Cole Johnson completely dominated all the Bridgelink entities and is attempting to use the Bridgelink corporate structure to prevent KBCM from recovering the debt that KBCM is owed.

70. Cole Johnson holds at least 80% of all top-level entities in the Bridgelink corporate structure.

71. Cole Johnson is either CEO or Manager of each entity and he directly controls all decisions that each entity makes.

72. In working closely with Cole Johnson and Bridgelink since 2019, KBCM has seen firsthand that Cole Johnson is the sole decision maker with respect to all of the transactions at issue, including hiring KBCM and transacting with Bitech.

73. Upon information and belief, Cole Johnson creates new corporate entities for no purpose other than to attempt to shield assets and not pay his debts, including the debt that Bridgelink and Cole Johnson owe to KBCM.

74. Cole Johnson directly controls, through his majority stake in the top-level entities in the Bridgelink corporate structure, at least twenty limited liability companies.

75. Upon information and belief, all of these entities have the same offices at 777 Main Street, Suite 3000, Fort Worth, TX 76102.

76. In addition, all of these entities, including Bridgelink Power and Bridgelink Development, have the same employees and ownership.

77. Cole Johnson does not observe corporate formalities while operating the Bridgelink entities.

78. For instance, Cole Johnson uses the same email address and signature block—which designates him as Chairman and CEO of "Bridgelink Investments"—when transacting on behalf of Bridgelink Power and Bridgelink Development.

79. Consistent with Cole Johnson's majority ownership and control over the Bridgelink entities, there is no independent discretion or decision-making from these entities separate from Cole Johnson.

80. Rather, Cole Johnson has been the sole and ultimate decision maker with respect to the companies that received KBCM's services, and these entities had no separate mind or will apart from Cole Johnson.

81. Upon information and belief, whenever an employee or minority owner of the Bridgelink entities disagrees with Cole Johnson or acts independent of his instruction, they are terminated or shut out from the business. For example, in June 2023, Cole used his domination and control over Bridgelink to unilaterally oust its then CEO, Cord Johnson (Cole's brother and minority owner of the Bridgelink entities), from company operations.

82. Moreover, most of the companies owned and controlled by Cole Johnson are severely undercapitalized because he has moved their assets to other entities and ultimately sold them to Bitech as discussed below. Cole Johnson's conduct with respect to the Bitech Transaction exemplifies this behavior.

83. Cole Johnson engaged KBCM through Bridgelink Power to sell solar and battery energy storage products that Cole Johnson represented to KBCM that Bridgelink Power, or its subsidiaries, owned. Then, as discussed above, KBCM devoted over one thousand hours working on this project at the request of Cole Johnson, and Cole Johnson ultimately sold those assets to Bitech.

84. At the end of March 2024, after KBCM negotiated and participated in the drafting of the letter of intent with Bitech, and as the transaction documents were being drafted by counsel, KBCM sent Bridgelink an invoice for the retainer payments that Bridgelink had never paid.

85. Instead of paying KBCM and honoring the Agreement, Cole Johnson, upon information and belief, directed Bridgelink and anyone working on the Transaction, including Bitech personnel, to stop communicating or working with KBCM with respect to the Transaction.

86. Cole Johnson also did not (i) permit KBCM to review the MIPA—*i.e*, the contract that sold Bridgelink's assets to Bitech, despite KBCM routinely participating in this process for transactions it is involved in, and (ii) did not include a payment provision for KBCM as part of the Transaction's closing, which is also typical.

87. Cole Johnson further misrepresented in the Bitech Transaction documents that "no Bridgelink Party not [sic] incurred or agreed to pay, or taken any other action that would entitle any Person to receive, any brokerage fee, finder's fee or other similar fee or commission with respect to any of the Transactions." Ex. B § 3.44.

88. Cole Johnson knew that KBCM's fee was trigged by any "Transaction" in which he sold substantially all of his assets and knew that the Bitech Transaction was a Transaction under the Agreement.

89. When Cole Johnson approached KBCM for assistance in 2023, he asked if he could pay a reduced fee if a Transaction was completed with Grupo Cobra, an entity that Cole Johnson had already been in discussions with regarding a potential deal. KBCM rejected this proposal because the amount of work KBCM would do in its capacity as a financial advisor to Bridgelink and Cole Johnson would be the same regardless of whether the entity had a previous relationship with Bridgelink or Cole Johnson. Johnson thus knew that any Transaction—even if he tried to cut KBCM out at the end of the process—would result in Bridgelink owing KBCM a fee.

90. Moreover, KBCM spent significant time and effort working on the Bitech Transaction and materially assisted Bridgelink and Cole Johnson in procuring that deal.

91. Indeed, the MIPA expressly recognizes KBCM and notes that "[t]he Due Diligence Materials to be provided by Bridgelink shall include, but not be limited to all documents, records, and data pertinent to the Development Projects and related agreements, any of the documents, information, or materials provided to or by KeyBanc Capital Markets ('KeyBanc') in connection with the preparation of any estimates or valuations of the Development Projects and access to KeyBanc representatives relating thereto." Ex. B §§ 1.01(aaa), 6.02.

92. Despite all of this, Cole Johnson now argues that he does not owe KBCM a fee because, in his words, "the names listed in this agreement do not cover the entities transacting in any of these transactions."

93. Cole Johnson is wrong for the simple reason that the Agreement he signed expressly provides that "Company"—which has the obligation to pay KBCM—includes "Bridgelink Power, LLC … together with its subsidiaries … [and] any entity or other structure that the Company may form or utilize to effect any of the transactions contemplated" by the Agreement. Ex. A, p. 1.

94. Cole Johnson was authorized to, and did, bind all of the Bridgelink entities to the Agreement.

95. Even if the Agreement was limited to Bridgelink Power, as Cole Johnson contends, that only proves that Cole Johnson is using limited liability companies in an improper attempt to avoid paying his debts by shifting assets around to newly formed entities without consideration to leaving the contracting entities, such as Bridgelink Power, sufficiently capitalized to satisfy their debts.

96. Upon information and belief, to complete the Transaction with Bitech, Cole Johnson moved all of the assets from Bridgelink Power (or one of its subsidiaries) to Bridgelink Development for no consideration and sold them to Bitech through Bridgelink Development, an entity that Cole Johnson now claims is not one of the over a dozen subsidiaries of Bridgelink Power.

97. In so doing, Cole Johnson has acted as if Bridgelink's assets are his to manage and distribute as he sees fit.

98. The only other reason Bridgelink Development could possibly have had the assets was that Cole Johnson fraudulently represented to KBCM that Bridgelink Power, or one of its subsidiaries, had the assets on which the engagement was based.

99. If so, Bridgelink and Cole Johnson not only committed fraud, but breached the Agreement's requirement to provide KBCM true and accurate information about the Company.

100. Appendix A, paragraph 1 of the Agreement provides: "All such information concerning the Company will be true and accurate in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made."

101. Allegations that funds were purposefully diverted to make the entity judgment proof or that an entity was dissolved without making appropriate reserves for contingent liabilities are sufficient to satisfy the pleading requirement of wrongdoing to pierce the corporate veil or pursue alter-ego liability under New York law.

102. Upon information and belief, Cole Johnson has attempted to make Bridgelink Power judgment proof so that he does not have to pay the Sales Transaction Fee.

## COUNT I

### Breach of Contract

### (Against all Defendants)

103. KBCM incorporates by reference the preceding paragraphs as if fully restated.

104. The Agreement is a valid and enforceable contract between KBCM and each of the named Bridgelink entities.

105. The Agreement and debts incurred under it are further enforceable against Cole Johnson under New York law because the Court should pierce the corporate veil of the Bridgelink entities and impose liability for their debt to KBCM on Cole Johnson directly.

106. KBCM fully performed its obligations under the Agreement by, among other things, providing Bridgelink with extensive financial advice, assistance, and services, at the

request of Bridgelink and Cole Johnson, to assist Bridgelink to sell substantially all of its assets, ultimately culminating in the Transaction with Bitech.

107. Bridgelink's Transaction with Bitech is a "Transaction," as that term is defined in the Agreement, that triggered Bridgelink's obligation to pay KBCM a Sales Transaction Fee.

108. Bridgelink has materially breached the Agreement by failing to pay KBCM a Sales Transaction Fee and failing to reimburse KBCM for its out-of-pocket expenses for services under the Agreement.

109. As a direct and proximate result of Bridgelink's material breach of the Agreement, KBCM has suffered substantial damages in an amount to be determined at trial, but in no event less than $3,032,367.00 plus applicable pre- and post-judgment interest and, as provided for in the Agreement, KBCM's costs and expenses in prosecuting this action, including reasonable attorney's fees.

110. Pursuant to Section IV of the Agreement, if payment of the retainers, Sales Transaction Fee, or KBCM's expenses is not made within 10 business days of when they became due, Bridgelink agreed to be responsible for "all fees and expenses incurred by" KBCM including its "reasonable fees and disbursements of [KBCM's] legal counsel" in any action to enforce Bridgelink's payment obligations. (Ex. A, at 5.)

## COUNT II

### Quantum Meruit

### (Against all Defendants)

111. KBCM incorporates by reference the preceding paragraphs of this complaint with the exception of paragraphs 103-110 as if fully restated. Count II is pleaded in the alternative to KBCM's Count I for Breach of Contract.

112. As set forth in detail above, KBCM provided substantial work, effort, and resources to and on behalf of Bridgelink and Cole Johnson, and Bridgelink and Cole Johnson received a direct, tangible, and substantial benefit as a direct result of KBCM's work and efforts and at KBCM's direct expense.

113. KBCM provided its professional services to Bridgelink and Cole Johnson in good faith with the expectation that KBCM would be compensated for its work and efforts.

114. Bridgelink and Cole Johnson knowingly and willingly accepted KBCM's professional services with full knowledge and the expectation that they would be required to compensate KBCM for these services.

115. The reasonable value of KBCM professional services to Bridgelink and Cole Johnson is at least $3,032,367.00.

116. Despite due demand, Bridgelink and Cole Johnson have failed to compensate KBCM for the reasonable value of its professional services, which sum is rightfully due and owing to KBCM.

117. As a direct and proximate result of Bridgelink and Cole Johnson's wrongful conduct, KBCM has suffered and will continue to suffer substantial damages in an amount to be determined at trial, but in no event less than $3,032,367.00, plus applicable pre- and post-judgment interest.

## COUNT III

### Unjust Enrichment

### (Against all Defendants)

118. KBCM incorporates by reference the preceding paragraphs of this complaint with the exception of paragraphs 103-110 as if fully restated. Count III is pleaded in the alternative to KBCM's Count I for Breach of Contract.

119. As set forth in detail above, KBCM provided substantial work, effort, and resources to and on behalf of Bridgelink and Cole Johnson and Bridgelink and Cole Johnson were substantially enriched as a direct result of KBCM's work and efforts and at KBCM's direct expense.

120. KBCM provided its professional services to the Bridgelink and Cole Johnson in good faith and with the expectation that KBCM would be compensated for its work and efforts.

121. Bridgelink and Cole Johnson knowingly and willingly accepted KBCM's professional services with full knowledge and the expectation that it would be required to compensate KBCM for these services.

122. Despite due demand, Bridgelink and Cole Johnson have failed to compensate KBCM for all sums which are rightfully due and owing to KBCM.

123. Equity and good conscience require Bridgelink and Cole Johnson to compensate KBCM for all sums which are rightfully due and owing.

124. Likewise, Bridgelink and Cole Johnson should not be permitted to receive a windfall in the form of uncompensated professional services from KBCM.

125. As a direct and proximate result of Bridgelink's wrongful conduct, KBCM has suffered and will continue to suffer substantial damages in an amount to be determined at trial, but in no event less than $3,032,367.00, plus applicable pre- and post-judgment interest.

**PRAYER FOR RELIEF**

As a result of the foregoing, KBCM respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

A. An award of compensatory damages against Defendants in an amount to be established at trial but in no event less than $3,032,367.00.

B. An award of KBCM's attorneys' fees, and costs as provided for in the Agreement.

C. Pre- and post-judgment interest on all amounts awarded.

D. Such other or further relief as this Court deems just and proper.

Date: August 2, 2024       Respectfully submitted,

              */s/ Erica Barrow*
              BAKER & HOSTETLER, LLP

Erica A. Barrow, Esq.
ebarrow@bakerlaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY  10111
T 212.589.4200

Sam A. Camardo, Esq. (*Pro Hac Vice* forthcoming)
scamardo@bakerlaw.com
Baker & Hostetler LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, OH 44114-1214
T 216.621.0200